Our last case this morning is 4090687, Gagnon and Franks v. Sysco. This is Mr. Norm, who are you for the appellant? Mr. Brecha. I see. Thank you, Counsel. Mr. Brecha for appellee. Okay, Mr. Norm, you may proceed, sir. I'd like to reserve five minutes for rebuttal. You can get it automatically. Thank you, Your Honor. May it please the Court, Counsel, Your Honors, unless, Your Honor, if you'd like to hear it, I'll dispense with the recitation of the facts of the underlying event. Go right ahead. The only thing I would like to point out, and the essence of what we're here to discuss, is whether or not Judge Fahy abused her discretion with respect to interstate loan non-convenience analysis done as related to her order from July of 2009. And that is our standard of review? Yes, Your Honor. Whether or not she abused her discretion, which under Illinois law, I won't go as far as to say it was a fanciful ruling. I will say, if you look at the ruling itself and apply the case law, it was unreasonable, it was illogical, and it's not well-founded based upon the facts of this case. At the heart of this matter, we have a case where the defendants were sued. And there's two, and it's an important distinction, and it's not really clear in her order either. There's an individual defendant, Dr. Mr. Stewart, who's a resident of Vermillion County, Illinois. And there's a corporation that I'll concede is an Ohio, it's a Delaware corporation that has Ohio offices, but they have a large distribution facility in Vermillion County. The trucks are there, the training is there, the logs are there, the records are there, the trip started there and the trip returned there. When did the accident happen? It happened on Interstate 94 just outside of Kalamazoo, Michigan, Your Honor. Any witnesses up there to it? Well, two are dead, and there are, as my understanding is, the two plaintiffs themselves are witnesses, and there are some other witnesses that were in their vehicles, and I believe there were some other plaintiffs in an unrelated case that had some smaller claims. As I understand it, the death cases are settled. My clients gave deposition testimony only as witnesses in that case. Was that something of importance to the trial judge in determining the decision? Well, I think it was, Your Honor, and we've never said Michigan doesn't have witnesses in it, Michigan doesn't have an interest in it. But at the end of the day, in terms of the witnesses, it's a rear-end auto accident by a tractor-trailer of a stopped line of vehicles on a clear day going approximately 50 miles an hour. So whether or not there's going to be the need for multiple witnesses to testify to that I think is highly unlikely. In fact, one of the arguments that's being proffered in this case, and I think it's a circular argument by defendants, is the application of Illinois Respondent Superior Law to remove my counts 2 and 3, which weren't addressed adequately by the trial court, as to the negligent entrustment, the training, the failure to follow the Federal Motor Carrier Safety Act. That's particularly important here because the judge actually states in a ruling that these additional allegations stem from the conduct of the defendants in Michigan. No, they don't. That's plain wrong. That's why this court needs to reverse this ruling. Those counts 2 and 3 clearly emanate from the laws, the training, and the conduct in the vehicle being maintained and supplied in the state of Illinois. These gentlemen, particularly Mr. Stewart, the individual defendant, holds an Illinois commercial driver's license. I can't understand how that is so important in deciding whether to have a case in Illinois or Michigan. Well, it is judged particularly, I think, under the public interest factors that have to be analyzed in this case because we have to ask ourselves, does Michigan have an interest in this case? Of course they do. Does Illinois have an interest in this case? Of course they do. But the appropriate standard is whether or not the law required the judge to transfer this, strongly favored the transfer of this case, and whether or not the defendants met their burden to satisfy that requirement. And the judge herself, I think, gets this confused. She says right in her order, the defendants have to show that their choice of form is substantially more appropriate. That's language that's talked about in Griffin in some of the older cases, but what's the actual standard that should have been applied by the court, and it's not supported in a ruling, is, and I'm quoting from First National Bank versus, I always mispronounce this, Guineer, excuse me for the pronunciation, that the defendant must show that the plaintiff's chosen form is inconvenient to the defendant and another form is more convenient to all the parties. You also can't consider the convenience of the plaintiffs. The judge gets into the substantial appropriate analysis, and it's not substantiated in a ruling, and it's illogical under the facts. There are numerous witnesses here in Danville, Illinois, Vermillion County. There's also suggestion, Your Honors, that we're somehow form shopping. I don't see how the plaintiff can be accused of form shopping when they sue a resident defendant in their home county where he works, lives, and is employed. My clients didn't choose to get branded by a Vermillion County resident, an Illinois licensed CDL driver, who works in all the logs and all the stuff that's maintained in Danville, Illinois. That isn't the issue. We didn't pick that. How do the logs and the stuff maintained in Danville, Illinois, have anything to do with this case? Well, based upon counts two and three, which the trial court just glossed over, it's highly relevant to the gentleman's training and education experience and qualifications under the Federal Mortar and Carrier Safety Act. We proffered an expert affidavit stating that based upon these recreated logs that had apparently the original ones had burned up in the fire, they're then produced in the state of Michigan. They get an affidavit from the state trooper talking about that underlying record.  that the on-duty time wasn't tracked correctly, and that the logs themselves were not only inaccurate, if you actually believe what they said, his average speed from point A to point B was around 107 miles an hour. Based upon all that, I think I can marshal evidence that suggests that he was negligently trained, they weren't compliant with the Federal Mortar and Carrier Safety Act, and the explanation for why he hit on a long straight stretch of road, a stopped line of construction cars, in the middle of the day, on a nice sunny day, back when the... In Kalamazoo, Michigan. In Kalamazoo, Michigan, Your Honor, was that he fell asleep at the wheel. Now, if that's true, if that's true, whether or not they apply this respondent superior case from Illinois, which I think is somewhat of a disingenuous argument, because they've asked the trial court to, and asked this court, to do an analysis of Illinois law when they say there should be a Michigan case that applies Michigan law. But even if we do that, that would only... The respondent superior law only is a defense to the negligence counts. It would not remove counts two and three. If I can show to the trial judge there was reckless conduct, there was willful and wanton conduct, which would expose them to a higher level of liability in terms of punitive damages, which were not at that stage in the litigation. However, I have to do extensive discovery with all these Danville, Illinois employees, some of whom are admittedly by defense no longer their employees, so there's no control over these people. And that's all going to occur in Vermillion County, Illinois, where we brought our lawsuit, which is not only an appropriate form, it's the form that has the most vested interest in the case. And therefore, the trial judge was plain wrong when she made her rulings about the witnesses. She talks a lot about the first responders. Are there witnesses in Michigan? Of course there are. How many witnesses do we need to talk about traffic control after the rear-end accident? How many witnesses do we need to talk about the fact of the rear-end accident? We don't need a lot, Your Honors. What we do need is we need all of these Vermillion County defendants, Mr. Stewart. No one's talked about the fact that Mr. Stewart's an individual defendant who doesn't work there anymore. How is it more convenient for Mr. Stewart to litigate this case in Kalamazoo, Michigan? Who is Stewart? He's the driver of the tractor-trailer. Is he represented? He is, by the same law firm, conveniently enough. The corporate law firm. That's never been addressed in this case by the ruling. So you have Mr. Stewart, who's no longer an employee. You have Mr. Place, the co-driver who was allegedly asleep in the cab, who's no longer their employee, who's a Vermillion County resident. You have the company, although it's incorporated in the state of Delaware, has a large facility and all the other knowledgeable employees in Vermillion County, Illinois. You have the safety trainer. You have a guy who answered the interrogatories, all in Vermillion County, Illinois, some of whom are no longer their employees. So the compulsory appearance of witness issue is critically important to plaintiff's burden of proof in the underlying case and the other theories of Marshall. I have to be able to get these people into a court. It's going to be a lot harder for me, who has the burden of proof in the underlying lawsuit, to do that if I'm forced to litigate my case in the state of Michigan. Well, what about the officers? What about the troopers? Counsel was able to voluntarily get an affidavit from the head trooper that investigated this case to talk about the laws. Why does that make sense in trying to decide whether it should be changed? It's because, Your Honor, it all goes to the ability to get the witnesses in the court that they're going to testify. Here, troopers already, upon their own conduct, demonstrated his willingness to participate. He's probably, in my opinion, I would offer to this court, the only relevant witness that we want to call because he did the analysis, his name's on the final report from the state troopers' department. That's why. With respect to the physicians, whether this case goes to trial in Vermillion County, Illinois, it goes to trial in Kalamazoo County, Illinois, these neurosurgeons, orthopedic surgeons, ER physicians, they're going to be presented by evidence deposition. That's the practice that's conducted. That's what goes on every day in these courtrooms. So I don't think that's a consideration. I don't see at the end of the day, before I lose my train of thought, this issue about form shopping, the final thing I'd have to say on this, and counsel quotes it in his, when he cites the Daughty v. Union Pacific Railroad, in his own brief, that in the judge, the underlying trial judge, talks about questioning our possible motivation for filing the case. I'm quoting from Doughty. Accordingly, while courts acknowledge that plaintiffs form shop, courts may not consider this practice in a form of nonconvenience analysis, citing Wiesner, 98 Illinois 2nd at 368. Your Honors, the plaintiffs filed the case where all of the defendants resided in the state of Illinois. So I'm not sure, again, because it's not articulated in the ruling, but what the trial court felt about our motivation in filing the claim where the defendant resided. So it goes beyond simply a jurisdictional issue. Your opponent cites Goodley v. State Park. I notice you don't respond to it in your reply brief. As to specifically what issue? The question of whether it should be granted the right to keep the trial in Illinois. My response is I think there are other cases that factually are much more on point, particularly the Woodward case, which is the 5th District case I cite. It talks about the fact of the Australian automobile accident where there's 29 witnesses in Australia. The car is there, the tire was there, all the first responders are there, the medical personnel are there. But the court decided that it was more appropriate because the technologist, the development center, a lot of the records related to this delamination issue of the tire were, in fact, I believe it's either Macon County or Madison County, I may be confusing them, but it was in the state of Illinois near Decatur, that that case was appropriately brought, given the deference to the plaintiff's choice, in Illinois and it was okay to keep it here. Just like Beavis v. Boeing. Boeing Corporation is now headquartered in Cook County. They get sued all the time for accidents that happen all over the world. In Beavis, the court said it was appropriate, although that case, the accident, the plane crashed in Peru and there were hundreds of witnesses in Peru, families in Peru, physical evidence in Peru. It was appropriate to keep it in Cook County, Illinois, even though those plaintiffs were not residents of Illinois and were given slightly less deference. What court so decided? Which court, Your Honor? It was the First District Court. Is that the decision that is soundly based? The Beavis v. Boeing? Yeah, I think so. Why is that? Well, Judge, because it's analogous to our case and it's consistent with what the Fifth District has done in Woodward. I don't understand it. We've got all these witnesses in Peru. Why should the case be heard in Cook County? Because of the substantial deference that's afforded the plaintiff's right to choose where they litigate their case, even when those plaintiffs… Well, if that were the case, then no case, there wouldn't be a form of nonconvenience granted. Your argument about deference would trump it. I'm not trying to take it to its logical extreme, Your Honor. Tell me why it makes sense for the case to be tried in Peru. Because, Your Honor, the defendants, the witnesses that were needed in the Beavis v. Boeing case to address the product liability issues were all found in the United States of America, and the court decided it was more reasonable to compel these people to appear in Cook County Circuit Court than to try to get them, and they weren't all Boeing employees, by the way. There were other manufacturers and parts and distributors and salespeople, than to try to get them to go to Peru. I believe the same analysis was applied in the Woodward case in terms of Australian tire manufacturers, just like in this case, where those people are all found in Vermillion County, Illinois. Your opponent talked about Woodward and why he thought it wasn't appropriate here, and then he replied that he doesn't respond back to that issue. True, Your Honor. We unfortunately didn't respond to every issue that was raised in his motion. This one must have been important if you're arguing it now. Well, Your Honor, we did raise Woodward in our opening brief, and I think Woodward is an analogous case, because you have an auto accident. Admittedly, it was related to a defective tire, but again, the decision makers,  all those types of things were to be found in the state of Illinois, and the court said, although we acknowledge Australia has an interest in the case, there's 29 witnesses, medical personnel, we have to do an uneven balancing test in favor of the plaintiff and the plaintiff, and it was appropriate to keep the case there. I would say that the trial judge in this case didn't do an uneven balancing test. She simply looked at it from, well, I think it's more appropriate to do it in Michigan, so I'm going to let it go to Michigan, and didn't give us the appropriate deference. We're entitled to, even though we're not, admittedly, resident plaintiffs of Vermillion County, I don't think the court should lose sight of the fact, the big picture here, that the defendants themselves are residents of Vermillion County. They're not being dragged into some other county, state. Let me ask this, counsel, to see if I understand your position. You seem to be arguing to us that, although the events occurred in the state of Michigan, that what occurred there is really not going to be the subject of much dispute, because there's not much to dispute. You had a truck that ran into stop traffic, was that it? True, Your Honor. And the driver survived, truck driver? He did survive, Mr. Stewart. He's the other named defendant in this case. Was he criminally charged in Michigan? My understanding is he was charged with reckless homicide, because two people died in a fireball, and it's my understanding, although admittedly limited, that that was pled down, and the outcome was he had to agree to never drive a truck in the state of Michigan again, and they did not have to serve jail time. And that's a rudimentary understanding of what occurred. What was he convicted of? It was not, it was pled down from, I don't know Michigan criminal law, I'm not a criminal lawyer, but it was pled down from something along the lines of reckless conduct that led to a death versus just plain old vanilla reckless conduct. But he pleaded guilty to it. True, yes. And is the, your term, co-driver? Yeah, Mr. Victor, excuse me, Mr. Place was the co-driver. Is he a defendant? No, he was not a defendant, because all the evidence established he wasn't driving at the time. However, he certainly is going to have relevant testimony to give us about what they were doing at the moment, what their hours were, how they were keeping their logs, all those things. So your theory at trial is going to be not really that Mr. Stewart was driving negligently, but that he was reckless or had fallen asleep, and that this was because of lack of supervision or policies pushed upon him by Cisco Corporation? Well, Sigma is their subsidiary. Sigma. Correct, his supervisors and trainers in Danville, Illinois. Correct. When did all this occur, by the way? When was this accident? The accident itself was March 24, 2007. When did you file suit? We filed suit in 2008. I see my time. No, no, sign up. You've got two minutes. Okay. We filed suit in 2008 based upon the Vermillion County 08 filing date. I can't tell you off the top of my head. I apologize what the exact month was. Okay. Does your complaint set forth these theories about recklessness and the respondeat superior badness? In counts two and three, we set forth our respondeat superior theories and their violations of the Federal Motor Carrier Safety Act, which has been adopted by Illinois, codified in Illinois law, by the way. It does not actually allege willful and wanton or reckless conduct because I haven't had an opportunity to do the discovery necessary to plead that, in my opinion, on a good faith basis. And then, you know, I have to take a lot of deposition to do a lot of discovery that hasn't happened in this case to marshal those facts, place them in my amended complaint, and then get leave from the trial judge, consistent with our rules, to plead punitive damages. And then the trial judge has to decide if that's appropriate or not. I haven't had an opportunity to do any of that at this point. And your position is it will be harder to do that if this case stays in Michigan because you're going to have difficulty deposing people in Illinois? True. True. I'd still have to have subpoena powers over these people that are in Vermillion County, which is the county we chose to bring the lawsuit. Are there any people consistent with your theory of the case you know of now who are not located in Vermillion County? None that I know are not located in Vermillion County. So all the Sigma Illinois people and other drivers, as far as you know, are all in Vermillion County? For the purposes of my answer, I'm assuming the people that all work in the Danville Sigma facility live in the general Vermillion County area, that they're not driving 100 miles each day to go to work. Thank you, counsel. You have a chance to address this again in a rebuttal. Thank you, Your Honor. Okay, Mr. Bracca. May it please the Court, Bill Bracca for the defendants. Counsel. First, I'd like to respond to some of the issues that were raised in the appellant's argument. First, our contention is it was not a truck crashing into stop traffic. Our contention is, from Mr. Stewart's affidavit, which is in the record, the plaintiff, Gagnon, cut off his truck, and then he struck, was not able to stop, and then struck Ms. Gagnon's vehicle, and that caused a chain reaction, which led to the two people being killed and the other injured. So, to say this case is one... But there's a dispute about the circumstances of what happened in the Michigan accident. Absolutely. We contest strongly that Ms. Gagnon was stopped. What about the criminal conviction? What was that? There was a plea. I'm not sure what the plea is myself. It was a no-contender right plea, Judge, which, Your Honor... Sorry. In Michigan, which is not a guilty plea there. Different from our practice here in the state of Illinois. Illinois would regard that as a guilty plea, but in Michigan it's a no-contender right plea. So, that was done. Michigan evidenced its interest, its public interest, in this collision by bringing that action to begin with. The plaintiffs contend that... What was the result of that? What was the result of what? The no-contender plea. What happened? Well, I think counsel accurately described it, that Mr. Stewart agreed that he would not drive in Michigan again, and I believe Illinois revoked his CDL. And the plaintiffs make a big deal about Illinois revoking his CDL, but that's the tail wagging the dog, because Michigan brought the action that led to Illinois revoking the CDL. If Michigan didn't bring that action, Mr. Stewart would still be driving on the highway today. The no-contender plea in Michigan would constitute a judicial admission in Illinois? I think it would, Your Honor. Isn't that a reason to argue that the case should remain in Illinois? Well, I think that the plaintiff might suggest that, Judge. I don't know. As a matter of policy, what about that? Well, as a matter of policy, the... Your Honor, there has to be comedy among the states. Illinois would respect Michigan law, Michigan would respect Illinois law. What about the whole point that you heard Mr. Norm make, that consistent with his forthcoming theory about this, responding at Superior and all the rest of that, that he's going to have to be deposing lots of people, all of whom appears are located in Vermillion County, Illinois. If this action remains in Michigan, how's he going to be able to do that? Well, Your Honor, that was our point in bringing the motion to begin with, because in our pleadings we identified 28 people who we need to depose who are in Kalamazoo. Who are they? They are first responders who went to the scene, they are ambulance personnel, they are tow truck personnel, they are the doctors in the hospital who treated the plaintiffs, they are the police, the accident reconstruction personnel. How much of any of that is at issue? A lot of it is going to be at issue, Judge, because it's going to go right to the point that I started out this argument with. We contest the fact, the allegation that we were stopped. But all of the witnesses in Michigan are disinterested, correct? I mean, a police officer is going to testify just facts now, right? That's correct. As opposed to witnesses in Danville who are not disinterested. Well, let's talk about the witnesses in Danville, because I think that's an important consideration. In Smith v. Jewell, which we talk about in our brief, it was a form of non-convenience case where the plaintiffs wanted to keep the case in Cook County because Jewell was based in Cook County. They claimed they had to depose all the truck mechanics, drivers, and witnesses as to what went at. And the First District said the plaintiffs have not shown that these witnesses remember they deal with many trucks and many truck drivers every day, and they haven't shown anything, and they'll be able to introduce documents. And that's the same case here, because we attached in our appendix several documents showing the evaluations of Stewart by our people. And additionally, SGMA is regulated by the Federal Motor Carrier Safety Administration. They were audited a couple months before this incident. They received the highest safety rating that any motor carrier can get, a satisfactory safety rating. So what the plaintiffs really want to do is they want to conduct a fishing expedition. They want to go in and talk to everybody to see if they can get something out of the case. Why aren't they entitled to do that? Well, they aren't entitled to do that, Your Honor, because here's why. And counsel glassed over this. Their big claims to keep this case in Illinois are counts two and three, negligent, entrustment, negligent supervision. Because we have stipulated that respondeat superior will apply to count one, the negligence count, Illinois law is clear that those claims don't state clauses of action. If this case stays in Illinois, we'll move to dismiss at 2615 because those claims don't state clauses of action. The Gantt case, the Ledesma case, Campo v. Gordon, they all say that if an employer stipulates to respondeat superior in a negligence context, that bringing separate claims for negligent entrustment, negligent supervision, are piling on, they're duplicative, and they're going to lead to prejudicial evidence that has nothing to do with the crash. What about a claim that the driver fell asleep, was acting recklessly by driving excessively without resting, and that this was, look at that, encouraged by the employer? This is plaintiff's theory. Assuming that were all true, let's say, wouldn't the plaintiff be entitled to plead and prove that? There's no basis for that allegation. That's not my question. I'm saying, assuming it's true, wouldn't the plaintiff be entitled to plead and prove it? Yes, but you're on second base, and you haven't taken first base. Well, how do we get to second base if we don't let them bet? Because Illinois law says that you can't. There is not a clause of action under these circumstances to bring those claims if the employer stipulates that if the employee is negligent, we're responsible under respondeat superior. The stipulation by the employer that the employee is negligent trumps any later clause of action against the employer for reckless or willful conduct with regard to its treatment of this guy and what they expect him to do? No, that's not the law. Okay, well, I didn't think it would be, but my question is, going back to what I asked you, what if those were the facts in this case? How would the plaintiff go about trying to establish that? Wouldn't they have to depose all these folks? But he can depose them anyway. He can initiate a proceeding under Supreme Court Rule 204B. In the trial court, they said it's no problem for us because we could depose our people in Michigan. But this goes back to Justice Appleton's question. You have a bunch of people in Michigan who are disinterested, a bunch of people who you shouldn't expect to have trouble. Deposing or getting statements from police officers or hospital personnel or EMTs. The other people on the highway who what they saw, I don't know where they're from, but that would be Michigan. The other people on the highway from Michigan, typically that wouldn't be a problem. But if you're the plaintiff and you're trying to establish bad conduct on behalf of some of these folks, bad conduct on behalf of the corporation for whom they're working, you'd expect that you're going to encounter some resistance. We told the trial court, we'll tell you, we've told everybody, we'll produce our people in Michigan. Well, but what about the fact that, as Mr. Norum pointed out, several of them are no longer employed? How are you going to do that? Well, we can't produce them in Michigan, but he can file a proceeding in Illinois under Rule 204B and conduct all the discovery he wants. How would that work? You'd have to get court authority to try to subpoena people? That's correct. How is that more efficient than just leaving the case there? Because when you look at all the public interest factors and all the private interest factors. What are they? The convenience of the parties. Ease of access to sources of proof, testimonial, documentary, and real evidence. All other practical problems that make trial easy, expeditious, and inexpensive. The cost of obtaining willing witnesses. The court focused on that. Certainly all the Kalamazoo police have agreed to come, but we're going to have to pay for that. Additionally, the case law, the Conn case, the Botella case, first district cases, they say that courts considering 4M9 convenience need to consider the expense of bringing people. And these are all professional people. These are all policemen. So we're going to take all the policemen out of Kalamazoo or have the force come down to Danville for a trial. What about the fact, if it is a fact, that this is undisputed testimony? Why is it you're going to hear all that? Why can't you stipulate to it? What part of the testimony of all these Michigan witnesses is going to be disputed? The medical personnel? Is that an issue? Well, I'm sure the medical personnel would be an issue because the controlling Michigan law provides that there are certain thresholds of proof that need to be established by the plaintiff before he can recover for pain and suffering, non-economic damages. And Michigan law further provides in connection with damages that there is no recovery from us for medical expenses, for the first three years of lost wages, or for replacement services up to $20 a day. So all of those things will be an issue in Michigan, dealing with the plaintiff's ability to carry on a normal life. So are you going to need to hear from these medical providers? They will be critical witnesses, Your Honor. Who are the plaintiffs, Brianna Gagnon and Andrew Franks? I take it these are people who were injured, but obviously not killed because they are persons who are brought this, not their states. Ms. Gagnon graduated from Western Michigan University with a degree in engineering a month after this crash. Then in the fall she went to work for Kellogg's. But these are people who were injured in the crash, and they are seeking recompense. That's correct. Mr. Norr mentioned that there were two people killed, but those are not... Those actions have been settled, Your Honor. They were brought in Kalamazoo. Were Franks and Gagnon in the same car? Yes. Gagnon was driving. Franks was in the passenger seat. Franks is a student. He was at Hope College as of October 2007 in Michigan. You asked about the Woodward and the Bevis case. They came up. What was different about them? They're product liability cases. Product liability cases focus on where the product is, not where the injury occurred. So additionally, the Bevis case that was cited, the Peru case that was discussed, why was that kept here as opposed to going to Peru? One reason was that there could be no view. The crash occurred in the jungle, and the crash site was vandalized, so there would be no view. In this case, the only view could occur in Michigan. That was one of the points the trial judge relied on in reaching her result. The issue in a view is whether the view can occur. That was necessary, but we have expert testimony in our record. Tell me about your representation to the court about, again, bringing in the witnesses and how enforceable that is. You said to Judge Fay, apparently you'd see to it that all these witnesses were produced in Michigan? Our employees. Your employees. Yes, and there was an allegation that that was manipulation. But, Your Honor, in the Quade case, just decided by the first case, the Supreme Court rejected appeal, in the Jones v. Searle laboratories, in Gridley. It's repeatedly a practice where employers bring their people to the transferee forum to avoid, to get the benefit of compulsory process over witnesses in the transferee forum. And that's what we want. So it's no manipulation at all. Other than the driver and the co-driver, have you been informed of anyone else whom the plaintiff might wish to depose who is not continuing to be an employee? There are two that he's talked about. One, a Jeff O'Brien, who was a supervisor in Danville. A supervisor for an organization that got the highest safety rating that the DOT can give. And two, the individual who took Mr. Stewart on a truck driving trip before he was hired to check on his adequacy. The results of that is a document that's in the record. We attached it to our brief. So those two people and the other two would be the ones who were once employees and are no longer employees? There are only three of them. Okay. Mr. Stewart. We represent Mr. Stewart. He's not going to come to Michigan. He's going to go to Michigan. I mean, what's the argument on that? I don't get it. So you have three people. There are three witnesses. Now, he's, in their brief, the plaintiffs have a laundry list of people they want to talk to. Under the Botella case, that's insufficient to keep a case in the forum what's brought under forum nonconvenience. You need to name what you want out of them. And we've done that. Mr. Porter, our Michigan counsel, listed some 28 people who he wants to depose who were important witnesses for us. So Mr. Norm comes up with all these people he wants to depose in this case and it's moved to Michigan. You're going to provide those as long as they're all employees? Yes. The talk about the facility in Danville. The same as a facility in Detroit. So, I mean, we're in Detroit as well as Illinois, Your Honor. This delivery run on which the crash occurred was one that started in Danville and went to several, eight different stops in Michigan. The drivers were on their way to another delivery in Howe, Indiana when this crash occurred. So Michigan's connection with this case is overwhelming, far more than the potential claims that the plaintiff wants to raise in connection with the negligent entrustment and negligent supervision claims. Moving ahead, we talked about the private factors. I didn't get into the public interest factors. And they're critical. One of them is which law controls. Plaintiffs originally, in the brief in the trial court, they said, it's appropriate for the case to be heard by a court familiar with the controlling law. Then they took the position that trial court doesn't need to decide that in a form of nonconvenience case. But it's definitely a requirement under Gridley that Illinois courts dealing with interstate form of nonconvenience motions address choice of law.  We're not suggesting, ever. We didn't want a complete choice of law determination made down in the trial court. The Quade case said that kind of choice of law determination is not necessary. But what we did like Quade is we examined the issues under the restatement and showed that Michigan law controls.  Thank you, counsel. Good morning. Your brother, sir. Briefly, as to Quade, we distinguished that in our reply brief. It deals with a third-party case. It deals with a product case where it was prescribed by. And the whole issue for the First District was there were learned intermediaries that were going to be brought into this case that were in California. Illinois had no control of that. There is no third-party case here. What law is going to apply in this case? We don't know yet, Your Honor. The court stopped me in my oral argument, and that was pointed out, in dealing with the Michigan law. Counsel tried to raise this issue as to this Michigan threshold to try to argue that Michigan law would apply in this case. Why wouldn't it? Why wouldn't it? Let me take a step back, Your Honor. He makes this whole threshold argument about Michigan standards and why it would be different from Illinois standards. I believe it may very well apply in this case. However, if Michigan law applies in this case, the Supreme Court said repeatedly there's not a reason to necessarily transfer the case out of an appropriate form, number one. Number two, Illinois judges apply other states' laws all the time, particularly in an auto accident case. I point out, though, Your Honors, that if Michigan law applies, then the Ladesma case and these other cases that he keeps citing on Respondent Superior don't apply. So the whole argument on that issue falls by the wayside. Ladesma at 727 says, if Illinois law applies, I'm talking about, and Ladesma does apply, and let's assume that he's correct on the Respondent Superior, and that would knock two and three out. What Ladesma specifically says at 727 is it doesn't exculpate reckless or willful wrong conduct, because then think about the policy ramifications of that. Is Mr. DeBecca correct that there is a dispute concerning what happened at the accident? I strongly dispute that based upon... Is there a... I don't think there is. ...an affidavit from Stewart saying these people pulled out in front of him? Honestly, off the top of my head, I can't recall what exactly... That seems to be a pretty significant matter, Mr. Norm. Did he make it up? No, Judge, but he did. Mr. Stewart did plead guilty to a significant charge related to this that I think is substantial. Plead guilty under NOLA contender or what? Correct, under NOLA contender. And he cut a deal to never drive in the state of Michigan again to avoid having killed people due to his negligence. I think that's evidence that would... Well, he still could have been negligent in not responding appropriately to people pulling out in front of him. The question is, is that his claim that they pulled out in front of him? Are we... You described this as essentially no dispute on the facts of the accident, Mr. Norm. It seems to me that Mr. Burka said, oh, we've got plenty of disputes. This is just one of them. Is that right? As to... I'm blanking on what Stewart said in his affidavit. Do you want me to be honest with this court? Is Mr. Burka correct that he made a promise to the court that he will bring all the employees and make them available for you? He told the trial judge that. The problem with that is right now I only know of three that are no longer employees. I have no idea once we start doing the depositions if there could be five or ten more that are no longer employees. I don't know that. I know for sure the co-drivers... Is his promise something upon which the trial court and this court could rely upon those who are employees? I don't think so because I don't see how it would be legally binding if these people the next day no longer work for the firm. We don't know what's going to happen. If they are working for the firm, for all the people who are working for the firm, that was my question. I still don't see how that's legally binding, Judge, because we can't predict if this case goes to trial in two years in Michigan what that group of people would still be working for. If Sigma calls a guy that in a year no longer works there, he's going to tell the guy to go to scratch if he tells him he has to go to Michigan. Moreover, whether... How about all the doctors, officers, and police officers in Michigan, and you're going to bring them down to Illinois? Whether we bring people to Danville or we bring people from Michigan to Danville or from Danville to Michigan, even if it's their own employees, they still got to pay them to come, number one. Those are their employees. You're talking about Michigan police officers, Michigan doctors, Michigan witnesses, going to bring them down to Illinois. Your Honor, the Michigan doctors, I would take an evidence step. Well, let's skip them. All the Michigan witnesses, all the parties that saw this happen in Michigan, you're going to bring them down to Illinois, and you think that the trial judge was wrong in denying or granting the motion for him not to convene? Correct, because like in these other cases, Woodward, Vivas, there were 20. I see my time is up. Okay. Thank you, counsel. We're going to take this matter and advise it will be in recess until tomorrow.